## APPEAL OF ROBERT AND GUSTAV THAL.

Docket No. 960.   Submitted October 20, 1925.   Decided April 16, 1926.

Good will claimed as basis for obsolescence disallowed.

*Bernard Greensfelder, Esq.*, for the taxpayers.
*Briggs G. Simpich, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

FINDINGS OF FACT.

The taxpayers are residents of St. Louis, Mo. Some time in the year 1892 they entered into a partnership under the firm name of Robert Thal & Co., which has since been operated under such name. They have also used the trade names, Red Cross Manufacturing Co., Crown Beverage Co., and Arlette Fruit Products Co., in their business operations as departments of the partnership.

From the date of its formation until 1902, the partnership was engaged in the purchase and sale of vinegar and molasses as jobbers. It then became a wholesale dealer in fortified cider, an alcoholic

beverage, and in various non-alcoholic fruit syrups. It sold fortified cider under the trade names or brands of Bull Dog Brand, Cannon Brand, Army Brand, Navy Brand, Lion Brand, Red Cross Brand, and Premium Brand, none of which was registered in the United States Patent Office, or with any trade association maintained for the protection of trade names, marks, or brands.

In its business operations the partnership purchased cider in bulk from producers and manufacturers, and, by adding sugar thereto, produced a fermented product with from 10 per cent to 20 per cent alcohol content, which was known to the beverage trade as fortified cider. In July, 1919, it voluntarily discontinued the sale of this product, and since that date has sold no fortified cider, either under any of the trade names heretofore enumerated or otherwise. There is no indication in any of the trade names under which it sold fortified cider, or in any of the advertising matter offered in evidence at the hearing, that any of the products so advertised and sold had any alcoholic content.

Prior to July, 1919, and at all times subsequent to that date, the partnership has advertised and sold various fruit syrups and non-alcoholic fruit beverages, which it advertised and advertises under the trade names of Vino, Bracer, Red Cross Punch, Namoco, Red Cross Brand Tip, and Red Cross Brand Cordial. None of these trade names is registered in the United States Patent Office or otherwise. Since some time prior to or during 1919, the partnership has also engaged in the business of dealing in aluminum ware at wholesale.

At the date July 1, 1919, when it discontinued the manufacture and sale of fortified cider, the partnership had about 5,000 customers. It now has about 1,500 customers, to whom it sells non-alcoholic beverages. Fortified cider was sold at a price of $1.50 per gallon in 1919; sweet cider, containing benzoate of soda to prevent fermentation, now sells for about 50 cents per gallon. Prior to July 1, 1919, fortified cider comprised about 75 per cent of the total beverage sales of the partnership, and fruit syrups and non-alcoholic products made up the remaining 25 per cent.

On November 3, 1919, the Commissioner issued Prohibition Mimeograph Number 5, containing instructions relating to cider and vinegar, addressed to the Federal prohibition officers for their guidance in connection with the enforcement of the National Prohibition Act of October 28, 1919. He stated that the addition of sugar or other fermentable substances to cider for the purpose of increasing the alcoholic content is in violation of section 3282, Revised Statutes, as amended, and that, after the Eighteenth Amendment to the Constitution of the United States became effective, cider could be manufactured and sold commercially only if the alcoholic content was

under one-half of 1 per cent; but that cider and fruit juices manufactured in the purchaser's home could be sold after the Amendment became effective only to persons having permits to manufacture vinegar.

During the years 1909 to 1912, inclusive, the capital and net earnings of the partnership were as follows:

| Year. | Capital. | Net earnings |
|-------|----------|--------------|
| 1909 | $76,596.10 | $9,271.80 |
| 1910 | 55,535.11 | 2,345.31 |
| 1911 | 53,900.83 | 4,764.83 |
| 1912 | 53,536.10 | 14,375.26 |
| 1913 | 65,069.69 | 30,912.68 |
| Average | 60,927.54 | 12,333.87 |

OPINION.

LANSDON: In this appeal the taxpayers claim deductions from gross income for 1920 on account of obsolescence of good will resulting from war-time and national prohibition legislation. They seek to establish a substantial good will or intangible value in their property at March 1, 1913, by a statement of the invested capital and net earnings employed in and resulting from their business operations for the five years 1909 to 1913, inclusive. Even if, without other evidence, the value of intangibles can be properly computed from an analysis of capital and net earnings covering a period of years, the showing made by the taxpayers is wholly insufficient for their purpose. A substantial part of the net earnings, practically one-half, adduced as a basis for intangible value, resulted from operations during the year 1913. Prior to that year no good will value is indicated by the earnings. The increased income for 1913 may have been attributable to the earning power of intangibles developed prior thereto, but the taxpayer offered no evidence upon which we can base such a conclusion.

Several factors essential to the determination of good will value by a scrutiny of financial results are overlooked or ignored by the taxpayers. The business in question was conducted as a partnership. We are unable to determine from the evidence whether the amounts set out as net earnings are remainders after payment of reasonable compensation to partners who devoted their time to the operation of the enterprise. We are also without information as to the value of the tangible assets employed in the business. The amounts set forth are designated as capital, with nothing to indicate their net worth after the deduction of borrowed assets. In the consideration of a similar problem in the *Appeal of Edwin Schiele Distilling Co.*, 3 B. T. A. 873, we have held that earnings of a

partnership are subject to reasonable reduction on account of salaries to partners actively employed in the business, and that due consideration must be given to the use of borrowed capital. After careful consideration of the evidence offered by the taxpayers, we are of the opinion, therefore, that no value of intangibles as of March 1, 1913, has been established.

The taxpayers having failed to prove their ownership of any intangibles or good will inherent in their business at March 1, 1913, the Board deems it unnecessary to consider the remaining issues raised.

*The deficiencies are $35,371.94 as to Robert Thal, and $37,361 as to Gustav Thal. Order will be entered accordingly.*